IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

<table>
<tr><td>GARY HINKLE and JUDITH HINKLE,<br><br>        Plaintiffs,<br><br>vs.<br><br>CRUM & FORSTER HOLDING, INC.;<br>THE NORTH RIVER INSURANCE<br>COMPANY; and UNITED STATES<br>FIRE INSURANCE COMPANY,<br><br>        Defendants.</td><td>Case No. 3:08-cv-0222-RRB<br><br><br><u>**ORDER REGARDING MOTIONS AT<br>DOCKETS 101, 136, and 140**</u></td></tr>
</table>

Before the Court are a number of motions to be resolved prior to trial. The Court resolves several herein and expects to resolve the remainder of the motions soon.

Defendant North River Insurance Company has moved for Partial Summary Judgment on three issues at Docket 101. Plaintiffs have filed a Motion for Partial Summary Judgment on the issue of coverage by estoppel at Docket 136. Defendant has filed a Second Motion for Summary Judgment on four additional issues at Docket 140. All issues have been fully briefed, and the Court concludes that oral argument is not necessary and the hearing scheduled for

ORDER RE DOCKETS 101, 136, AND 140 - 1
3:08-CV-0222-RRB

July 27, 2010, is **VACATED.**  If the Court finds oral argument necessary with regard to the remaining motions, a hearing will be scheduled.

**I.   FACTS**

Plaintiffs Gary and Judith Hinkle purchased a parcel of real property (River Terrace R.V. Park) from Raymond and Jessica Bilodeau in 1974.  The Bilodeaus had operated a dry cleaning and laundry business on the premises, which the Hinkles continued until 1984.  The pleadings suggest that for a period of time, the Bilodeaus owned the property, but were absent.

The Hinkles suggest in their Complaint that there is credible evidence that a dry-cleaning agent ("perc") was dumped onto the ground at River Terrace in 1965 and thereafter, without the knowledge of the Bilodeaus.  In 1997, the State of Alaska brought a civil action against the Hinkles, seeking unspecified sums associated with cleaning up the perc contamination.  The Hinkles filed suit against the Bilodeaus, arguing that at least some of the perc contamination occurred during the Bilodeaus' ownership and that they should be responsible for paying the State's clean-up charges.[1]  To date, roughly $2 million in clean-up fees have been

---

[1]     In 2006, a man named John Reffett signed an affidavit that he and another individual (now deceased) had dumped PERC into the gravel at River Terrace in 1965.  Another individual who was
(continued...)

ORDER RE DOCKETS 101, 136, AND 140 - 2
3:08-CV-0222-RRB

paid on behalf of the Hinkles to the United States and the State of Alaska.[2]

The Hinkles sued the Bilodeaus under Alaska's Model Toxics Control Act, which provides for strict liability for those who own property on which hazardous substances are released without permission.  AS 46.03.822(a).  When a contribution claim is made by one former owner against another, "the court may allocate damages and costs among liable parties using equitable factors determined to be appropriate by the court."[3]

In this case, the Hinkles have filed suit against North River Insurance Company and Unites States Fire Insurance Company ("the Insurers"), alleging that at various times between 1968 and 1974, both of these Defendants insured the Bilodeaus for claims made against them arising out of occurrences at River Terrace.[4]

---

[1](...continued)
employed by the Bilodeaus from 1967 to 1974 indicated that PERC may have been mishandled, although he doesn't seem to indicate that it was actually spilled or dumped.  Docket 150 at 4-5.

[2]     The DEC ceased its investigation in 2000 after the DEC and the Hinkles settled the enforcement action.

[3]     AS 46.03.822(j).

[4]     The Hinkles further alleged that Defendant Crum & Forster Holding Inc., acted as the authorized agent for both insurance companies, and was therefore responsible for the obligations undertaken by both companies with respect to the Bilodeaus.  Crum & Forster Holding has been dismissed from this matter pursuant to stipulation of the parties.  Docket 82.

ORDER RE DOCKETS 101, 136, AND 140 - 3
3:08-CV-0222-RRB

Attempts to settle the Hinkles' contribution claims against the Bilodeaus have failed with both insurance companies. Mr. Bilodeau, on behalf of himself and his deceased wife, has settled with the Hinkles in the form of a consent judgment in favor of the Hinkles for over $2 million.  In exchange, Bilodeau assigned all of the claims he had against the three Defendants to the Hinkles. The Hinkles have agreed to refrain from enforcing the consent judgment and bring this lawsuit against the Bilodeaus' insurance carriers under an assignment of rights, alleging breach of contract, and seeking compensatory and punitive damages, in addition to attorney fees and costs.

At the center of this case is a dispute regarding whether or not insurance policies ever existed that would cover the damages caused by the spilled chemicals.  As early as 1997, the Insurers indicated that they could not locate any policies that covered the Bilodeaus.  Since then, Plaintiffs state that the Bilodeaus have discovered at least five policies that provide them with coverage for the contamination.  Plaintiffs allege that although microfilm records indicate that several policies existed, Defendants have failed to acknowledge the existence of those policies.  Ultimately the Insurers agreed to pay for the Bilodeaus' defense, subject to a reservation of rights.  As of May 2005, the Insurers still could not locate any of the policies, but continued the defense under the

two primary policies.[5] Defendants, however, indicate that "no party has ever been able to locate a copy of the declarations page of either policy, the terms or conditions of either policy, or the exclusions and endorsements that were part of the policies."[6]

**A.    Defendants' Motion for Partial Summary Judgment at 101**

Defendants seek summary judgment, at Docket 101, on three discrete issues:

1.    U.S. Fire and North River did not breach any duty to defend that may have been owed to their insureds;

2.    U.S. Fire and North River did not unreasonably fail to settle the claims against their insureds; and

3.    Plaintiffs cannot recover against U.S. Fire and North River under a theory of failure to maintain a proper claim file.

In response, Plaintiffs complain that Defendants seek summary judgment on two issues that Plaintiffs have not claimed in this lawsuit.[7]    Specifically, they note that they have not (1) claimed a breach of duty to defend their insured; or (2) alleged a failure

---

[5]    See  Exhibit  D  and  E  to  Ashbaugh  Declaration  at Docket 137.

[6]    Docket 148 at 16.

[7]    Docket 111.

ORDER RE DOCKETS 101, 136, AND 140 - 5
3:08-CV-0222-RRB

to maintain a proper claim file.[8]  Plaintiffs note that although
the insurance companies have failed to maintain proper claims
files, the Hinkles have not asserted an independent cause of action
based on this failure.  They argue it is "procedurally improper to
seek dismissal of a claim that has not been made."[9]  The Court
agrees.  Summary judgment on issues 1 and 3 is **DENIED AS MOOT**. No
claim exists regarding the breach of a duty to defend nor the
proper maintenance of claim files.

### 1.  Bad Faith Claim for Failure to Settle.

Plaintiffs argue that bad faith failure to settle is a
question for the jury under Alaska law.[10]  Furthermore, there remain
factual discrepancies surrounding this issue.  Plaintiffs allege
that Defendants ignore or misstate much of the evidence and rely
heavily on contested facts to support their position.[11] Ultimately,
the issue of coverage is at least a disputed issue of material
fact.[12]  Accordingly, Plaintiffs argue the Court should deny the

---

[8]      Docket 111 at 15.

[9]      Fed. R. Civ. P. 56(b).

[10]     Docket 111 at 17-19.

[11]     Docket 111 at 20.

[12]     Docket 111 at 21.

ORDER RE DOCKETS 101, 136, AND 140 - 6
3:08-CV-0222-RRB

motion for partial summary judgment on the "bad faith failure to settle" claim because there are genuine issues of material fact.[13]

Defendants argue that they are entitled to summary judgment for two reasons: (1) based on the facts that existed at the time the settlement offer was made, there was insufficient information available about the alleged policies to impose a duty on the Insurers to settle the claim; and (2) even if such a duty existed, Defendants made a reasonable decision not to settle the claim because there was no substantial likelihood of an excess judgment against the Bilodeaus.[14] Defendants assert that there was no unreasonable failure to settle as a matter of law.[15]

For purposes of this motion, the parties do not dispute that the claim against the insured was covered by the relevant policy, and that the insurer had accepted coverage on the claim. The parties further agree that *Jackson v. American Insurance Co.*, 90 P.3d 136 (Alaska 2004), establishes the controlling legal standard.[16]

---

[13]     Docket 111 at 23.

[14]     Docket 102 at 8.

[15]     Docket 124.

[16]     Docket 124 at 2; Docket 111 at 19.

ORDER RE DOCKETS 101, 136, AND 140 - 7
3:08-CV-0222-RRB

The *Jackson* court stated:

> The covenant of good faith and fair dealing is implicit within every insurance contract; it requires that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. When a plaintiff makes a policy limits demand, the covenant of good faith and fair dealing places a duty on an insurer to tender maximum policy limits to settle a plaintiff's demand when there is **a substantial likelihood of an excess verdict against the insured.** This duty is grounded in the insurer's legal duty to act in good faith to protect the interests of the insured. . . . When there is a great risk of a recovery beyond the policy limits so that the most reasonable manner of disposing of the claim is a settlement which can be made within those limits, a consideration in good faith of the insured's interest requires the insurer to settle the claim . . . .
>
> Breach of the covenant of good faith and fair dealing exposes the insurer to a claim of bad faith and may expose it to liability for any excess judgment against its insured.
>
> But the covenant of good faith does not broadly require an insurer to give its insured pre-trial assurances that it will cover an excess judgment against the insured if the insurer fails to accept a plaintiff's policy limits demand. [This] would translate into a general duty to issue a pre-trial waiver of policy limits, and there is no such broad duty.

90 P.3d at 142 (internal citations, quotations and footnotes omitted).

Defendants argue that there can be no liability for failing to settle because none of the essential elements required by *Jackson* - a covered claim, a demand within policy limits, and a substantial likelihood of an excess judgment - exist. They argue that the fact

that the scope and amount of coverage for the Bilodeaus continues to be in dispute is sufficient by itself to prevent triggering the *Jackson* duty.[17]  After eleven years, no party has been able to find true and complete copies of all of the relevant policies. Defendants argue that the absence of the policies is not a "genuine issue of material fact."  Rather, for the purposes of an alleged breach of good faith and fair dealing, "what is important is that in May 2008, when the Hinkles made a settlement demand on the Bilodeaus, the amount and scope of coverage available to the Bilodeaus was not known and coverage was disputed."[18]  Accordingly, Defendants argue that the duty of settlement recognized in *Jackson* had not been triggered.[19]  Furthermore, Defendants argue that there was no basis to conclude that there was a "substantial likelihood" of a judgment against the Bilodeaus in excess of $1.2 million.  On two occasions, the Bilodeaus' attorney opined - in letters to the insurance company -  that their chances of avoiding liability was at least 70%.[20]  Further, the State of Alaska had earlier evaluated the Bilodeaus' potential liability and concluded that evidence was

---

[17]     Docket 124 at 15.

[18]     Docket 124 at 4.

[19]     *Id.*

[20]     Docket 101, Exhibits 5-A at 2, 5-H at 4.

ORDER RE DOCKETS 101, 136, AND 140 - 9
3:08-CV-0222-RRB

not sufficient to justify proceeding against the Bilodeaus. Accordingly, Defendants argue there could be no breach of the duty of good faith and fair dealing in declining to accept the $1.2 million settlement demand made by the Hinkles.[21]

Given the uncertainties set forth above, including uncertainties as to the amount and extent of insurance coverage, and significant issues regarding liability and damages, the Court cannot conclude that in May of 2008, when the settlement demand was made, there was a "substantial likelihood" of a judgment against the Bilodeaus in excess of $1.2 million for which either the Bilodeaus or the insurance carriers would be responsible. Moreover, a reasonable jury could not likely reach such a result. Therefore, Defendant's Motion for Summary Judgment regarding the Bad Faith Claim for Failure to Settle at **Docket 136** is hereby **DENIED.** This issue shall not be presented to the jury.

**B.    Plaintiff's Motion for Partial Summary Judgment re Coverage by Estoppel at 136.**

This motion concerns the Insurers' intent to deny coverage with respect to three insurance policies: two primary liability policies insuring for up to $100,000 in liability for 1971-1974 ("the primary policies") and one umbrella policy insuring for up to $1 million in liability for 1968-1971 ("the 68-71 umbrella policy).

---

[21]    Docket 124 at 15.

Plaintiffs seek a ruling from the Court that the delay in asserting coverage defenses under the two primary policies prejudiced the Bilodeaus (and therefore, the Hinkles), and that therefore the Insurers should be estopped from denying coverage under those policies. They also complain that the Insurers asserted no coverage defenses under the umbrella policy for ten years, and thus should be estopped from raising any coverage defenses for that policy except for the argument that the policy does not exist.[22]

In 2008, the Insurers sent the Bilodeaus a second letter reserving their rights.[23] At this time, the Insurers raised four specific coverage defenses they had not mentioned before: (1) the damage may not have been caused by an "occurrence" as defined by the policy, (2) the contamination may have occurred after the policy periods, (3) the coverage was barred by a "pollution exclusion" that the Insurers allege was appended to the policies, and (4) coverage was barred by an exclusion for damage to property that was "owned or occupied" by the insured.[24] At this time, the

---

[22]    Docket 136.

[23]    Docket 113-2, Exhibit C.

[24]    Id.

ORDER RE DOCKETS 101, 136, AND 140 - 11
3:08-CV-0222-RRB

Insurers continued to deny the existence of the 68-71 umbrella policy.[25]

Plaintiffs argue that the Insurers here failed to provide a timely, reasonable, and detailed explanation of the insurer's coverage position.[26] Plaintiffs rely on unpublished Ninth Circuit precedent to argue that "in Alaska, whenever an insured has been prejudiced by an insurer's inadequate explanation, the insurer 'will be equitably estopped from denying coverage . . . even though the facts may ultimately demonstrate that no indemnity is due.'"[27]

With respect to the two primary policies, Plaintiffs argue that the Insurers are estopped from relying on the four new coverage defenses they first introduced in 2008, because the eight year delay prejudiced the Bilodeaus.[28]

Finally, with respect to the Umbrella policy, Plaintiffs argue the Insurers are estopped from raising any defense other than the alleged nonexistence of the policy, because the failure to timely disclose any such defense would be prejudicial. This is particularly true, argue Plaintiffs, because the Insurers had all

---

[25]    Id.

[26]    Docket 136 at 7-10.

[27]    Docket 136 at 10.

[28]    Docket 136 at 10-12.

ORDER RE DOCKETS 101, 136, AND 140 - 12
3:08-CV-0222-RRB

of the documents showing the existence and terms of the umbrella policy since August 1997.  Microfilm was provided in 2004, and another set of copies in 2008.[29]

Defendants argue that Plaintiffs' motion is based on a theory of coverage by estoppel that is: (1) contrary to established Alaska law, (2) contrary to sound insurance coverage practices, and (3) impossible under the facts of this case.[30]  Defendants argue that: (1) estoppel has never been pled by the Hinkles; (2) coverage by estoppel cannot arise when the claims are based on lost policies; (3) by providing independent counsel to their insured pursuant to a reservation of rights, the Carriers retained the right to contest coverage; and (4) the Carriers adequately informed their insured of potential coverage issues.[31] Defendants note that coverage by estoppel is an extreme remedy used to prevent insurer misconduct.[32]

Defendants further note that the Alaska supreme Court has recently reversed a trial court ruling of coverage by estoppel. *Progressive Cas. Ins. Co. v. Skin*, 211 P.3d 1093 (Alaska 2009).

---

[29]    Docket 136 at 12-14.

[30]    Docket 148.

[31]    Docket 148 at 7-19.

[32]    *See Sauer v. Home Indem. Co.*, 841 P.2d 176, 178-79 (Alaska 1992).

ORDER RE DOCKETS 101, 136, AND 140 - 13
3:08-CV-0222-RRB

In light of the policies being lost, Defendants argue that the only appropriate course of action is to inform the insured that the insurer must reserve all of its rights under the policy until the policy terms are established.

Plaintiffs argue that Defendants had no more information in 2008 than they had back in 1997, and that their delay in asserting defenses is unfair.[33]  They argue that the Insurers did not "timely and fully explain their coverage position," despite the missing policy paperwork.  This litigation has been prejudiced by the failure to disclose defenses earlier, because it is impossible to turn back the clock and guess how the litigation might have been impacted by timely investigation and disclosure.  Plaintiffs argue that either the Insurers were improperly hiding their coverage defense back in 1999, or they are currently asserting improperly speculative coverage defenses.

There is no evidence that the Insurers were improperly hiding either the insurance policies, the declaration pages or addenda, or the policy defenses in 1999 or ever.  Nor is there evidence that either the Hinkles or Bilodeaus were concealing the policies.  It must be noted that the underlying claims giving rise to this litigation were made roughly 23 years after the Bilodeaus sold

---

[33]    Docket 157.

their property to the Hinkles, and roughly 13 years after the Hinkles apparently quit the dry cleaning business. It is therefore not surprising that the insurance policies no longer exist. Nevertheless, the carriers provided a defense to the Bilodeaus under reservation of rights and, when doing so, made it clear that they were maintaining all possible defenses under any policies that may exist. Under the circumstances, this was not an unreasonable position to take, for again, without the actual policies, everyone was forced to engage in some degree of speculation. The Insurers satisfied their duty to defend and do not appear to have acted in bad faith. Moreover, the Court is unable to see, given the extensive discovery that was conducted relative to this dispute, and the numerous occasions that the carriers informed the Bilodeaus of their intent to claim any and all defenses the policies might provide, how Plaintiffs were unreasonably prejudiced by the general, as opposed to the more specific, statement of defenses that was originally given. Therefore, for all the reasons just mentioned, as well as the fact that estoppel was not pled by the Hinkles and is generally reserved to circumstances of insurer misconduct, the Court concludes that the doctrine of Coverage by Estoppel is not applicable here and **DENIES** Plaintiffs' Motion for Summary Judgment re Coverage by Estoppel at **Docket 136.**

Case 3:08-cv-00222-RRB   Document 207   Filed 06/11/10   Page 15 of 18

**C.    Defendants' Second Motion for Summary Judgment at 140**

Defendants seek summary judgment on four additional issues:

1. Plaintiffs cannot recover under any of the alleged policies issued by U.S. Fire or North River because of a prior breach of the cooperation clause by the insured.

2. If there is no coverage under the policies, then there can be no liability for the breach of the duty of good faith and fair dealing.

3.   The settlement between Plaintiffs and Raymond Bilodeau, the insured under the alleged policies, is not reasonable.

4. U.S. Fire and North River did not engage in any conduct that would support the imposition of punitive damages against them.

The Court has reviewed the parties' briefing in detail and finds that enough uncertainties exist, and factual disputes, to preclude summary judgment against Plaintiffs at this time because of their settlement with the Bilodeaus. The Bilodeaus were aged, in ill health, and no longer residing in Alaska.  The matter had been ongoing for years and their attorney advised the settlement. Whether this justifies their conduct is unclear. Summary judgment on this issue is therefore **DENIED without prejudice.**

The Court does agree with Defendants that if there is no coverage under the insurance policies, which Defendants believe is the case, there can be no liability for the breach of the duty of

good faith and fair dealing. This is especially so given the fact that the carriers did pay to defend the Bilodeaus in the underlying litigation. Defendants' Motion for Summary Judgment on this point is therefore **GRANTED.**

At this point, the Court cannot conclude that the settlement between the Plaintiffs and the Bilodeaus was unreasonable, but is not prepared to forego the issue. Therefore, Defendants' Motion for Summary Judgment on this point is **DENIED without prejudice.**

Again, given the uncertainties regarding insurance coverage and the Bilodeaus' liability, and in light of the defense provided by the insurance carriers to the Bilodeaus, there does not exist sufficient evidence of bad faith as required by AS 09.17.020 to justify punitive damages under the unique facts of this case. Defendants' request for summary judgment on this issue is therefore **GRANTED.**

For the reasons set forth above, the motions at **Dockets 101**, **136,** and **140** are **GRANTED** and **DENIED** as outlined above.

In conclusion, the Court finds that there is insufficient evidence to establish bad faith on the part of the Insurers or to justify punitive damages. Still to be determined is whether insurance policies existed that covered all or part of the damages sought. The Court has yet to address the policy defenses. Given

ORDER RE DOCKETS 101, 136, AND 140 - 17
3:08-CV-0222-RRB

the rulings above, however, the parties shall confer and determine if the case can be settled at this time before undergoing a three week trial and the associated costs and risks thereof.

The parties shall notify the Court as to whether a settlement has been reached or is imminent on or before **June 25, 2010.**

**IT IS SO ORDERED.**

ENTERED this 11th day of June, 2010.

s/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE