IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GARY HINKLE and JUDITH HINKLE,<br><br>    Plaintiffs,<br><br>vs.<br><br>CRUM & FORSTER HOLDING, INC.;<br>THE NORTH RIVER INSURANCE<br>COMPANY; and UNITED STATES<br>FIRE INSURANCE COMPANY,<br><br>    Defendants. | Case No. 3:08-cv-0222-RRB<br><br><br><br>**ORDER GRANTING**<br>**SUMMARY JUDGMENT** |

Before the Court, at Docket 161, are Defendants with a Motion for Summary Judgment. Plaintiffs respond at Docket 169 and Defendants reply at Docket 177. Also before the Court is Defendants' Motion for Reconsideration at Docket 213, which Plaintiffs oppose at Docket 218. The Court has reviewed all of the relevant pleadings associated with these motions and has studied the history of this case, as well as the other resolved motions. The pleadings are thorough and the issues are clear. Oral argument is therefore not required. For the reasons set forth below, the Court **GRANTS** Defendants' Motions for Summary Judgment at Dockets **161** and **140**.

**I.  OVERVIEW**

The history of this case is long and tortured. The Court previously summarized it in its Amended Order Regarding Motions at Docket 208.  By way of overview, the Court notes that in 1997 the State of Alaska, pursuant to A.S. 46.03.820, proceeded against Gary Hinkle and his wife, Judith Hinkle, in a civil action for damages as a result of ground water contamination on and emanating from their property near Soldotna, Alaska, on which they had once operated a dry cleaning business. The Hinkles, in turn, filed a third party complaint for contribution against the Bilodeaus, who had sold the property to the Hinkles 23 years earlier, in 1974. The State of Alaska had apparently considered proceeding against the Bilodeaus, but concluded that there was insufficient evidence to do so. The Bilodeaus steadfastly denied contributing any pollution to the property during the time they owned it. In 2000 the Hinkles settled their dispute with both the State of Alaska and the United States after several million dollars was paid on their behalf to clean the property. The Hinkles persisted, however, in their claim for contribution against the Bilodeaus, who were being defended by their insurance companies, North River Insurance Company and United States Fire Insurance Company, under reservation of rights. Complete copies of the insurance policies that may have covered the loss were no longer in existence and could not be located by either

the Defendants, the insurance agent, or the Bilodeaus. Ultimately, in 2008, the Hinkles settled with the Bilodeaus for over $2 million, an assignment of rights against the Defendants, and a covenant not to collect on the judgment against the Bilodeaus. This lawsuit followed, in which the Hinkles assert that the Defendants breached their duty of good faith and fair dealing in the handling of these claims on behalf of the Bilodeaus and by refusing to accept the $1.2 million settlement offer in 2008. They argued that the Defendants should be subject to compensatory and punitive damages, a claim which the Defendants strongly denied.

On June 25, 2010, at Docket 28, this Court entered an Amended Order Regarding Motions at Dockets 101, 136, and 140. In this order the Court concluded that there was insufficient evidence to establish bad faith on the part of the Defendants or to justify punitive damages. The Court made no final determination as to the existence of the insurance policies or whether policy defenses existed that would preclude liability. The Court takes up these remaining two issues here in response to the Defendants' motion at Docket 161. Furthermore, it its order at Docket 208, the Court denied the Defendants' Second Motion for Summary Judgment at Docket 140, in which the Defendants sought dismissal of this case because of the settlement reached with the insured without the Defendants'

permission or knowledge. The Defendants seek reconsideration of this order at Docket 209 and the Plaintiffs oppose at Docket 216.

**II. DISCUSSION**

None of the parties hereto, past or present, can be blamed for the missing insurance policies. After all, notice of the claim sought to be insured was not made until roughly 23 years after the Bilodeaus sold the property in question to the Hinkles and left Alaska, and roughly 13 years after the Hinkles discontinued their dry cleaning business on the property. In almost any other context the statute of limitations would have long since run. The parties are left to speculate as to the terms, conditions, exclusions, and amounts of the policies in question.

What is known is that the Bilodeaus had some sort of insurance relationship with the Defendants between 1968 and 1974 and, based thereon, the Defendants provided the Bilodeaus with a defense in the underlying litigation for roughly nine years. Although there are no existing declaration pages, there are some indicators of one or more primary insurance policies, as well as several umbrella policies. Defendants now assert a number of defenses or exclusions to the insurance policies that they feel shield them from liability under the unique facts of this case. Plaintiffs argue that Defendants should be precluded from claiming such exclusions because they failed to timely assert them. The Court has already

denied Plaintiffs' motion for summary judgment on the issue of coverage by estoppel and will not revisit the issue.  Suffice it to say that the Court will consider the asserted coverage defenses and, taking the evidence in a light most favorable to Plaintiffs for purposes of this motion, assumes the existence of the policies and exclusions as suggested by Plaintiffs' expert, Donald Malecki.

**III. NO OCCURRENCE**

The Court agrees with the Defendants that any of the policies that would have conceivably existed for the time period involved would have been occurrence-based policies.  There is no evidence to suggest otherwise. Plaintiffs have failed to prove or establish sufficient evidence of an "occurrence," i.e. an **accident** during the policy period impacting the **ground water**, which would have been a condition of any policy issued during the time frame in question. The incident, which was alleged to have occurred in 1965, was not an accident and occurred roughly three years before any of the insurance polices at issue here were purchased. At best, this incident involved the deliberate dispersal of contaminants from a barrel in order to find a wedding ring.  The evidence provided by Plaintiffs suggests that if this occurred as suggested, the contaminants would have reached the ground water within months, and thus, well before the policy period began.

The incident that allegedly occurred during the winter of 1970-71 was (a) not an accident; (b) is highly speculative in terms of whether it happened or not; and (c) was minuscule in terms of the amount of contaminant involved. Plaintiffs suggest that contaminants may have been included in some frozen water that was thrown onto the ground during the winter of 1970-71 when the ground itself was likely frozen. But there is absolutely no evidence that any of this contaminant reached the ground water or was a factor in the contamination found by the state in 1997, 27 years later. The Court additionally notes the affidavit of Charles Cunningham in which he states that filters containing contaminants were stored on the ground near the dry cleaners while waiting to be disposed of at the land fill. Again, however, there is no accident and no evidence of significant contamination that may have reached the ground water.

## IV. PRIMARY POLICY DCL 17 52 52

Plaintiffs have recently argued that primary policy DCL 17 52 52 provided coverage in this matter. This claim was not made, however, until after the present litigation was filed and no evidence exists as to any of the terms or conditions of this policy. It is Plaintiffs' burden to establish such terms and conditions and recovery cannot follow without having done so. Moreover, any such primary policy would have, more likely than not,

been an occurrence-based policy, which would have precluded coverage as addressed above.

## V. THE UMBRELLA POLICIES

The Court concludes that the Contamination and Pollution Endorsements in the Umbrella Policies are enforceable and preclude liability under these policies. Such policy exclusions are valid, even if not filed with the Insurance Commissioner, for Alaska Statue provides for the enforceability of such endorsements.[1]

Furthermore, the Loss Payable Clauses in the Umbrella Policies have obviously not been satisfied. Such clauses are a critical part of an umbrella policy and are a condition precedent to any obligation to pay.

## VI. SUMMARY JUDGMENT

Under the unique circumstances of this case, the Court concludes that a reasonable jury could not find liability under any of the possible policies without engaging in gross speculation and guess work. It would therefore be unjust to permit this matter to proceed further. Summary Judgment is hereby **GRANTED** in favor of Defendants as requested at **Docket 161.** Any of the insurance policies that may have existed at the time on behalf of the Bilodeaus would have contained valid exclusions that would have

---

[1] See AS 21.42.220 and AS 21.42.230.

precluded coverage for the contamination alleged to have occurred in this matter.

**VII. BILODEAUS' UNDERLYING SETTLEMENT**

In its Amended Order at Docket 208, the Court denied without prejudice the Defendants' Motion for Summary Judgment at Docket 140 with regard to the propriety of the Bilodeaus' settlement with Plaintiffs without the knowledge or consent of the Defendants. In their motion at Docket 213, Defendants have requested reconsideration of this matter and the issues have been briefed.

In their motion at Docket 140, Defendants noted that liability insurance policies contain a standard "cooperation clause" which voids the insurer's obligation to cover the insured when the insured settles their liabilities without the consent of the insurer.[2] Given the ubiquity of such clauses, it must be presumed that any insurance policies owned by the Bilodeaus contained such a clause. However, a prior breach by the insurer precludes it from relying on the cooperation clause as a defense to liability for the settlement.[3] Defendants argued both in their motion at Docket 140 and in their motion for reconsideration that the Bilodeaus'

---

[2] <u>Great Divide Ins. Co. v. Carpenter ex rel. Reed</u>, 79 P.3d 599, 608 (Alaska, 2003).

[3] <u>Id</u>.

settlement agreement, without their consent, was unjustified by any breach on their part.

In its Amended Order at Docket 208, the Court held that there was a genuine issue of material fact as to whether the Bilodeaus' decision to settle was justified by the fact that they "were aged, in ill health, and no longer residing in Alaska," and because "[t]he matter had been ongoing for years and their attorney advised the settlement."[4] In their motion for reconsideration, Defendants argue that the Court erred because these issues are "irrelevant and immaterial," and only a prior breach by the insurance company can justify an insured's decision to settle without consent of the insurer.[5]

Upon further review, the Court concludes that Defendants are correct. The Bilodeaus cannot have been justified in settling with the Hinkles unless the Defendants first breached the insurance contract. For their part, Plaintiffs do not disagree that a prior breach is required. They simply assert that the Defendants breached by refusing to assume responsibility for the Bilodeaus' liability. The Court disagrees. As the Court has previously ruled, it was reasonable for Defendants to offer the Bilodeaus a legal defense under a reservation of rights until the question of coverage could

---

[4] Docket 207 at 16.

[5] Docket 213 at 3.

be resolved.[6] The Court has further held that it was reasonable for the Defendants not to settle the claim against the Bilodeaus, given the uncertainty of the Bilodeaus' liability.[7] Thus, the Defendants did not breach the terms of the alleged insurance contracts prior to the settlement agreement between the Bilodeaus and the Hinkles. The Bilodeaus breached the cooperation clause, and Defendants therefore have an affirmative defense against liability for the settlement. For the foregoing reasons, Defendants' Motion for Reconsideration at **Docket 213** is **GRANTED**.

## VIII. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment at **Docket 161**, regarding insurance policy defenses, and Defendants' Motion for Summary Judgment at **Docket 140**, regarding the improper settlement of the Bilodeaus' claims with Hinkles, are hereby **GRANTED.** Plaintiffs' claims are hereby **DISMISSED** in their entirety and all deadlines and hearing dates are **VACATED.**

**IT IS SO ORDERED.**

ENTERED this 29th day of July, 2010.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE

---

[6] Docket 207 at 15.

[7] Docket 207 at 7.